**United States District Court**
For the Northern District of California

1

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  WILLIAM HELM, et al.,                         No. C 08-01184 SI

9              Plaintiffs,                       **ORDER DENYING PLAINTIFFS'
                                                 MOTION TO REMAND**
10      v.

11 ALDERWOODS GROUP, INC., et al.,

12             Defendants.
                                    /
13

14        Plaintiffs have filed a motion to remand this action to state court.  The motion is scheduled for

15 hearing on May 9, 2008.  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate

16 for resolution without oral argument, and hereby VACATES the hearing.  Having considered the

17 arguments of the parties and the papers submitted, and for good cause shown, the Court hereby DENIES

18 plaintiffs' motion to remand.

19

20                          **BACKGROUND**[1]

21        This case involves a potential class action claim brought by employees seeking unpaid wages

22 and penalties.  On December 5, 2007, named plaintiffs William Helm, Deborah Prise, Heather P. Rady,

23 and others, filed a complaint in Alameda Superior Court against defendant Alderwoods Group and Paul

24 A. Houston, the CEO and director of Alderwoods since 2002.  Also named in the complaint are

25 defendants Service Corporation International ("SCI") and affiliates of SCI, who plaintiffs claim are

26 liable as successors-in-interest to Alderwoods.  The complaint alleges a class that includes all employees

27

28        [1] Unless otherwise noted, the following background facts are taken from the allegations of plaintiffs' amended complaint.

and former employees of the Alderwoods Group who were not paid their regular or statutorily-required rate of pay for all hours worked, up until the time SCI or its affiliates acquired Alderwoods. The class includes employees who worked at Alderwoods in many different states, though a significant percentage worked for defendants in California. The complaint alleges ten causes of action, including causes of action for violation of California labor laws, violation of the wage and hour laws of 27 other states and Puerto Rico, and various state common law claims. Included in the first cause of action are claims for failure to pay overtime compensation, failure to pay wages owed upon termination of employment, failure to provide meal and rest periods, and failure to provide accurate wage statements, all in violation of California law. As examples of the wage and hour violations defendants are alleged to have committed, the complaint explains that defendants did not compensate employees for time spent on call, attending trainings, performing "community work," or meeting with clients to discuss "pre-need purchases." The complaint also alleges that defendants required employees to work during meal breaks, directed employees not to record their hours for all time worked, and refused to pay overtime unless the overtime had been pre-approved. The complaint does not allege any causes of action arising under federal law.

On January 25, 2008, plaintiffs filed an amended complaint in Superior Court. Shortly thereafter, on February 27, 2008, defendants removed the case to this Court. Currently before the Court is plaintiffs' motion to remand the case back to Superior Court.

**LEGAL STANDARD**

Generally, a state court action is only removable to federal court if it might have been brought there originally. 28 U.S.C. § 1441(a). The federal removal statute is strictly construed, and federal courts reject jurisdiction if there is any doubt as to whether removal was proper. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). Federal law, 28 U.S.C. § 1446(b), requires that the notice of removal of a civil action must be filed within 30 days after service. The party seeking removal bears the burden of proving its propriety. *Duncan*, 76 F.3d at 1485; *Abrego Abrego v. The Dow Chem. Co.*,

**United States District Court**
For the Northern District of California

1    443 F.3d 676, 683-85 (9th Cir. 2006).

2    Under the Class Action Fairness Act ("CAFA"), "district courts shall have original jurisdiction

3    in any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive

4    of interest and costs, and is a class in which . . . any member of a class of plaintiffs is a citizen of a State

5    different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA also provides that "the claims of the

6    individual class members shall be aggregated to determine whether the matter in controversy exceeds

7    the sum or value of $5,000,000." *Id.* § 1332(d)(6). Because CAFA permits federal court jurisdiction

8    where only minimal, rather than complete, diversity exists, "[s]ection 1332(d) thus abandons the

9    complete diversity rule for covered class actions." *Abrego Abrego*, 443 F.3d at 680. The Ninth Circuit

10   has explained that CAFA did not disturb the traditional allocation of the burden of establishing removal

11   jurisdiction, holding "that under CAFA the burden of establishing removal jurisdiction remains, as

12   before, on the proponent of federal jurisdiction." *Id.* at 685; *see also Brill v. Countrywide Home Loans,*

13   *Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). Where, as here, the complaint does not plead a specific amount

14   of damages, "the removing defendant must prove by a preponderance of the evidence that the amount

15   in controversy requirement has been met." *Abrego Abrego*, 443 F.3d at 683.

16

17                                          **DISCUSSION**

18   Plaintiffs move to remand this action to state court, where it was initially filed. Defendants

19   contend that this Court may exercise removal jurisdiction under CAFA. Both parties concede that the

20   minimal diversity and numerosity requirements of CAFA are met, and the Court agrees. The only

21   dispute between the parties is whether defendants have met their burden of establishing, by a

22   preponderance of the evidence, that the amount in controversy has been met.

23   As an initial matter, the Court addresses defendants' concern that plaintiffs previously argued

24   that jurisdiction in federal court was proper under CAFA. The Court shares this concern, and thus

25   examines whether plaintiffs should be judicially estopped from arguing that the matter in controversy

26   does not exceed $5,000,000. "Judicial estoppel, sometimes also known as the doctrine of preclusion

27

28
                                              3

**United States District Court**
For the Northern District of California

1  of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then

2  seeking a second advantage by taking an incompatible position." *Wagner v. Prof. Eng. in Cal. Gov't*,

3  354 F.3d 1036, 1044 (9th Cir. 2004).  It is an equitable doctrine that is intended to protect the integrity

4  of the judicial process by preventing a litigant from "playing fast and loose with the courts." *Russell*

5  *v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).  The United States Supreme Court has identified three

6  non-exclusive factors that courts should consider in determining whether to apply the doctrine of

7  judicial estoppel:

8  First, a party's later position must be "clearly inconsistent" with its earlier position. . .
   . Second, courts regularly inquire whether the party has succeeded in persuading a court
9  to accept that party's earlier position, so that judicial acceptance of an inconsistent
   position in a later proceeding would create "the perception that either the first or the
10 second court was misled." . . .  A third consideration is whether the party seeking to
   assert an inconsistent position would derive an unfair advantage or impose an unfair
11 detriment on the opposing party if not estopped.

12 *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (internal citations omitted).

13 In the first iteration of this litigation, plaintiffs argued before a federal district court in the

14 Western District of Pennsylvania that the court could exercise original jurisdiction over the state law

15 claims at issue here, specifically because CAFA's $5,000,000 amount in controversy had been met. *See*,

16 *e.g.*, Defendants' Request for Judicial Notice ex. A at 23-24.[2]  This position is more or less inconsistent

17 with plaintiffs' current position, which is that defendants cannot *establish* that the amount in controversy

18 exceeds $5,000,000.  The Court declines to find plaintiffs judicially estopped from making this

19 argument, however, because the federal court in Pennsylvania did not accept plaintiffs' earlier position

20 that it could exercise jurisdiction over plaintiffs' state law claims under CAFA.  *See New Hampshire*,

21 532 U.S. at 750-51 ("Absent success in a prior proceeding, a party's later inconsistent position

22 introduces no risk of inconsistent court determinations, . . . and thus no threat to judicial integrity."

23 (internal quotation marks omitted)); *see also Perretta v. Prometheus Dev. Co.*, 520 F.3d 1039, 1045 (9th

24 Cir. 2008) (noting the importance of the Supreme Court's second factor).

25

26

27 [2] The Court takes judicial notice of the briefs and transcripts from the case of *Prise v. Alderwoods Group, Inc.*, No. 06-1641, currently pending in the Western District of Pennsylvania.

28

**United States District Court**
For the Northern District of California

1    Turning to the merits of plaintiffs' motion, defendants assert that they have established, by a

2    preponderance of the evidence, an amount in controversy that exceeds $5,000,000. In an attempt to

3    meet their burden, defendants focus on a few of the statutory violations alleged in plaintiffs' amended

4    complaint by class members who worked in California. Defendants assert that the total number of

5    nationwide class members is at least 2,450, that the total number of class members who worked in

6    California is 1,065, and that the total number of class members who worked in California but whose

7    employment was terminated is 561. Defendants' Opposition at 5; Schmuck Decl. at ¶¶ 10-12. With

8    respect to plaintiffs' claim that defendants provided inaccurate wage statements, *see* Amended

9    Complaint at ¶ 88, defendants argue that the amount in controversy is $4,260,000, assuming that the

10   maximum statutory penalty of $4,000 under California Labor Code § 226(e) is applied to all 1,065 class

11   members who worked in California, Defendants' Opposition at 8. This amount does not include either

12   the additional heavy penalties that could be awarded under California Labor Code § 226.3 for the same

13   failure to comply with § 226(a), or the attorney's fees provided by § 226(e). *Id.*

14   With respect to plaintiffs' claim that defendants failed to pay all wages owed to terminated

15   employees in violation of California Labor Code §§ 201-202, *see* Amended Complaint at ¶¶ 79-83,

16   defendants argue that the amount in controversy is $2,121,926.40, Defendants' Opposition at 10.

17   Defendants arrived at this figure by taking the average hourly salary of the named plaintiffs, determining

18   the average daily salary of the named plaintiffs based on the hourly rate, and multiplying that amount

19   by 30 days, which is the maximum statutory penalty for failure to pay all wages earned and unpaid to

20   an employee who is discharged or who has resigned. *See id.*; Cal. Labor Code § 203. Defendants also

21   assumed that this statutory penalty would apply to all 561 California class members whose employment

22   was terminated during the class period. Defendants' Opposition at 10.

23   Next, defendants argue that the amount in controversy for plaintiffs' claims of missed meal and

24   rest periods in violation of California Labor Code §§ 227.6 and 512, *see* Amended Complaint at ¶ 84,

25   is $17,707,542, Defendants' Opposition at 11. This calculation assumes that all 1,065 California class

26   members, making an average hourly salary equal to the average salaries of the named plaintiffs, were

27

28

5

**United States District Court**
For the Northern District of California

1  required to work during their meal and rest periods over the course of 250 working days per year during

2  the class period of 2.11 years. *Id.* When all three penalty amounts are combined, the total amount in

3  controversy is $24,089,468.40.

4      Under the preponderance of the evidence standard, the Court must determine whether it is more

5  likely than not that the amount in controversy exceeds $5,000,000. *Sanchez v. Monumental Life Ins.*

6  *Co.*, 102 F.3d 398, 404 (9th Cir. 1996). The court must assume the truth of the allegations in the

7  complaint and that a jury will return a verdict for the plaintiff on all claims alleged. *Kenneth Rothschild*

8  *Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). Plaintiffs' primary

9  contention is that defendants base these calculations on the total number of non-exempt current and

10  former employees who worked in California during the class period.[3] Plaintiffs argue that this pool of

11  class members is too large, because the complaint defines that class as all non-exempt employees who

12  were not paid their regular or statutorily required rate of pay for all hours worked. In other words,

13  plaintiffs suggest that the number of California class members who were denied meal and rest periods,

14  for instance, could be far less than the total number of California non-exempt employees. Plaintiffs

15  argue that without additional information regarding the number or percentage of employees who

16  actually experienced wage and hour violations of some kind, defendants' assumption that all non-

17  exempt employees would be awarded damages amounts to mere "speculation and conjecture," which

18  the Ninth Circuit has held is not sufficient to establish removal jurisdiction under CAFA. *Loudermilk*

19  *v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007). The court in *Loudermilk*, however, was

20  applying a more strict standard in which the defendant had to prove with "legal certainty" that the

21  amount in controversy was met because the plaintiff's complaint had alleged less than CAFA's amount

22

23

24      [3] Plaintiffs also argue that defendants arbitrarily determined the average hourly wage of the class based on the average hourly wage of the 27 named plaintiffs in this action. *See* Forestiere Decl. at ¶ 7; Schmuck Decl. at ¶ 14. The Court agrees that it would have been preferable for defendants to calculate

25  the average hourly wage based on the average wage of all class members, but as discussed below, it would be unworkable at this stage of the litigation to require defendants to determine the actual

26  individual members of the entire class. Thus, the average hourly wage of the named plaintiffs is an appropriate substitute. It would not necessarily be an appropriate substitute, however, if the average

27  were based on the salaries of only a few named plaintiffs.

28

in controversy.  *Id.* at 998; *see also id.* at 1002 ("[S]uch speculation does meet the 'legal certainty'

standard.").  Here, by contrast, the lesser preponderance of the evidence standard applies.

Although the Court agrees with plaintiffs that not every non-exempt employee who worked in

California during the class period may be a class member – because some unknown number of these

employees may not have been subject to any of the wage and hour violations alleged in the complaint

– the Court finds that defendants have put forth enough evidence to demonstrate that it is more likely

than not that CAFA's amount in controversy requirement is met.  First, plaintiffs clearly do not

contemplate that only a few of defendants' non-exempt employees have experienced the wage and hour

violations alleged in their complaint.  Plaintiffs' complaint states that the "class size is believed to be

several thousands of employees, a significant percentage of whom are within California."  Amended

Complaint at ¶ 60. In addition, at least some of the violations complained of appear to be the result of

company-wide policies that would apply to all non-exempt employees, not merely certain employees

with specific positions or job duties.  For example, the complaint alleges that defendants had a policy

of not paying employees for training that they were required or permitted to attend.  *Id.* ¶ 72(c).  In

addition, the complaint alleges that defendants had a policy of not paying for overtime unless the

overtime was pre-approved.  *Id.* ¶ 72(f).

Second, even assuming that not every non-exempt California employee has experienced the

wage and hour violations alleged, the numbers are such that even if only one-third of the total number

of non-exempt California employees were affected by defendants' alleged violations – a percentage

clearly not contemplated by plaintiffs' complaint – the amount in controversy would still exceed

$5,000,000. *See Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, *4 (E.D. Cal. May 1, 2007)

("[E]ven assuming far less than a 100% violation rate still results in an amount in controversy that

exceeds the jurisdictional minimum because the amount in controversy is estimated to be

$12,932,861.00 based on the underlying facts provided [in the] supplemental declaration.").

Third, the calculations discussed above do not include any damages that plaintiffs may be

awarded as a result of defendants' failure to pay overtime, a potentially huge dollar amount depending

7

1  on the number of employees who should have received overtime pay and the number of hours that went

2  uncompensated. Nor do defendants' calculations include attorney's fees, to which plaintiffs will be

3  entitled with respect to at least some of their claims. *See Loudermilk*, 479 F.3d at 1000 (attorney's fees

4  may be included in the amount in controversy if provided by the statute that provides the cause of

5  action).

6      Fourth, defendants' showing is partly the result of the way the California Labor Code is

7  structured. If plaintiffs prove any one of their many allegations regarding unpaid or insufficient wages,

8  the penalties discussed above for inaccurate wage statements, *see* Cal. Labor Code § 226(e), kick in for

9  each employee affected. In addition, for any employee affected who later resigned or was discharged,

10 the penalties discussed above for failure to pay wages to terminated employees, *see* Cal. Labor Code

11 § 203, will apply. Thus, even if only a smaller subset of the 1,065 non-exempt California employees

12 were included in the class, they would be able to collect statutory damages under multiple provisions

13 of the California Labor Code.

14     Ultimately, the amount of detail plaintiffs require would render removal under CAFA

15 unworkable in many cases. Plaintiffs would ask that defendants quantify the number of employees who

16 experienced a wage and hour violation during the class period, the type of wage and hour violation each

17 employee experienced, and that specific employee's hourly salary. Plaintiffs, in other words, would ask

18 that defendants conduct a fact-specific inquiry into whether the rights of each and every potential class

19 member were violated. This, however, is the ultimate question the litigation presents, and defendants

20 cannot be expected to try the case themselves for purposes of establishing jurisdiction, and then admit

21 to the opposing party and to the Court that a certain number of wage and hour violations did indeed

22 occur. Where, as here, plaintiffs' complaint (1) does not allege an amount in controversy less than

23 $5,000,000 and (2) provides no information indicating that the size of the class is not at least relatively

24 congruent with the total number of potentially-affected employees, the Court believes the evidence put

25 forth by defendants is sufficient. *See Muniz*, 2007 WL 1302504 at *4 ("As these allegations reveal,

26 plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that

27

28
8

United States District Court
For the Northern District of California

is discernibly smaller than 100%, used by defendant in its calculations."). Accordingly, the Court DENIES plaintiffs' motion to remand.

**CONCLUSION**

For all of the foregoing reasons, plaintiffs' motion to remand this case to state court is DENIED [Docket No. 43].

**IT IS SO ORDERED.**

Dated:    May 7, 2008

SUSAN ILLSTON
United States District Judge

9